UNITED STATES DISTRICT
COURT WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

UNITED STATES OF AMERICA                                        PLAINTIFF

v.                                      CRIMINAL ACTION NO. 3:18-CR-205-CRS

ADRIAN PERKINS                                                  DEFENDANT

**MEMORANDUM OPINION AND ORDER**

This matter is before the Court for consideration of a motion of the defendant, Adrian Perkins, *pro se*, seeking a reduction of his term of imprisonment due to poor health which has placed him in fear of serious illness or death from the COVID-19 virus (DN 76). The Court denied Perkins' earlier motion for compassionate release on June 19, 2020 for failure to exhaust his administrative remedies. (DN 61). On June 12, 2020, he filed a request for compassionate release with Warden Francisco J. Quintana at the Federal Medical Center ("FMC") Lexington. The Warden denied his request on July 29, 2020 noting that Perkins did not meet the medical requirements of Program Statement 5050.50 for compassionate release. (DN 76-1). The Warden instructed Perkins that he had a right to appeal the decision within twenty days of receipt of the denial. Perkins does not indicate that he appealed the decision. Instead, he filed the present motion for compassionate release five months after the warden's denial of his request. (DN 76). The United States has responded and objected to the motion on grounds of failure to exhaust administrative remedies and also on the merits (DN 79).

The World Health Organization declared the novel coronavirus known as COVID-19 a pandemic on March 11, 2020.[1] The President of the United States declared a national emergency on March 13, 2020 and the Governor of the Commonwealth of Kentucky declared a state of emergency even earlier, after the first confirmed case of COVID-19 on March 6, 2020.[2] As of the date of this writing, there are 142,238,073 confirmed cases worldwide and 3,032,124 deaths; in the United States, there are 31,350,025 confirmed cases and 561,921 deaths.[3] Further elaboration concerning the seriousness of the COVID-19 pandemic is unnecessary. The health risks associated with COVID-19, especially for those individuals confined to nursing homes or incarcerated in our jails and prisons where outbreaks can yield catastrophic result is apparent. However, the developments in the fight against the coronavirus are rapidly evolving worldwide and we must address each inmate's situation individually in the context currently presented when considering requests for compassionate release. Suffice it to say that the Court addresses motions for compassionate release, and Perkins' motion in particular here, with the gravity of the situation in mind.

Perkins is serving a 57-month prison sentence after pleading guilty in 2019 to conspiracy to distribute over 50 grams of heroin and possession with intent to distribute 391 grams of methamphetamine. This was not his first narcotics conviction. Perkins is incarcerated at the Federal Medical Center ("FMC") Lexington and is receiving medical care there.

---

[1] See Tedros Adhanom Ghebreyesus, Director-General, World Health Organization, Opening Remarks at the Media Briefing on COVID-19 (March 11, 2020) (transcript available at https://www.who.int/dg/speeches/detail/who-director-general-s-openingremarks-at-the-media-briefing-on-covid-19--11-march-2020).

[2] See President Donald J. Trump's Proclamation on Declaring a National Emergency Concerning the Novel Coronavirus Disease (COVID-19) Outbreak (March 13, 2020), available at https://www.whitehouse.gov/presidential-actions/proclamation-declaring-national-emergency-concerning-novel-coronavirus-disease-covid-19-outbreak/; Governor Andy Beshear confirms first case of COVID-19 in the Commonwealth and declares a state of emergency (March 6, 2020), available at https://chfs.ky.gov/pages/search.aspx?affiliateId=CHFS&terms=declaration of state of emergency.

[3] See Coronavirus Disease (COVID-19) Situation Dashboard, World Health Organization, https://covid19.who.int/ (last visited April 21, 2021).

18 U.S.C. § 3582(c)(1)(A) permits a court to modify a term of imprisonment and grant what is known as "compassionate release" for extraordinary and compelling reasons. Prior to December 2018, motions for compassionate release could only be made by the Director of Prisons. However, the First Step Act, PL 115-391, 132 Stat 5194 (Dec. 21, 2018), amended 18 U.S.C. § 3582(c)(1)(A) to allow defendants to bring such motions on their own behalf "after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier."  18 U.S.C. § 3582(c)(1)(A).

Perkins has provided a copy of a Response to Inmate Correspondence from Warden Quintana dated July 29, 2020 responding to Perkins' June 12, 2020 request for compassionate release (DN 76-1).  Perkins contends that since more than thirty days elapsed between his request to the warden and the warden's response, he should be deemed to have exhausted his administrative remedies in accordance with what has come to be referred to as the "lapse of 30 days" provision contained in the statute. *United States v. Alam*, No. 20-1298, 2020 WL 2845694, *2 (June 2, 2020)("For a prisoner to take his [compassionate release] claim to court, "he must 'fully exhaust[ ] all administrative rights to appeal' with the prison or wait 30 days after his first request to the prison.").

Perkins suggests that he has exhausted his administrative remedies despite the fact that after the lapse of thirty days he did not file his motion with the Court.  Instead, he did nothing and received a response from Warden Quintana seventeen days thereafter, affording him the avenue to exhaust his available appeal rights, a path he did not pursue.  The Court does not have a copy of Perkins' request, but it appears to have been forty-seven days from request to decision, according to the dates included in the warden's response.

The problematic circumstances here are that, on the one hand, Perkins received a response and did not appeal, despite that avenue being fully available to him.  Thus, he never "fully exhausted his administrative rights" as required by 18 U.S.C. § 3582(c)(1)(A), a prerequisite before a defendant may seek compassionate relief from the Court. On the other hand, Perkins did not receive a response to his request to the warden within thirty days, and § 3582(c)(1)(A) provides that "after the lapse of thirty (30) days since the warden's receipt of a request to move on defendant's behalf for a sentence reduction," the defendant may file his motion for compassionate release directly with the Court, thus relieving a defendant of further delay.  As Warden Quintana delivered a response to Perkins sixteen days late, Perkins seeks to capitalize on this delay to bypass the appeal process.  But Perkins has one foot in each camp in this instance.  He chose not to appeal and asserts the "lapse of 30 days" provision, yet he did not file his motion with this Court for another five months after receipt of Warden Quintana's denial. For the reasons articulated below, the Court finds that Perkins has failed to "fully exhaust all administrative rights," and that the "lapse of 30 days" provision is unavailable to him to avoid this exhaustion requirement.

After considering various opinions addressing the exhaustion provisions of the First Step Act, the Court concludes that the thirty-day exception to the exhaustion requirement was not designed to provide a "gotcha" mechanism when a response is actually received after the thirty day period and the defendant has an available avenue to fully exhaust his rights.  Rather, the "lapse of 30 days" provision was designed to address cases in which no prompt response is forthcoming from the BOP and a defendant is left in limbo awaiting agency action.  The statute tries to strike a reasonable balance between affording the BOP time to address the request, initially and on appeal, before there is review by the courts and ensuring there is no undue delay in the agency process.  A

defendant is thus deemed to have exhausted and may file his motion with the Court without waiting further for a BOP response after a lapse of thirty days from the date of his request to the warden.

The "lapse of 30 days" language has been variously interpreted as a "lapse of time" provision or a "futility" provision.

Under the "lapse of time" interpretation, once thirty days passes from the warden's receipt of a defendant's request for compassionate release, the defendant may petition the federal court for relief whether or not the warden has responded within the thirty-day period.  The "lapse of time" is viewed simply as a waiting period before judicial relief may be sought.

This interpretation would completely emasculate the requirement of full exhaustion of all administrative rights.  Higher level review by the BOP by way of administrative appeal would be rendered entirely optional.  "Preventing prisoners from charging straight to federal court serves important purposes."  *United States v. Alam*, 960 F.3d 831, 835 (6th Cir. 2020).  The BOP is uniquely positioned to assess prisoners' mental and physical health and potential risk to the public if released, and whether extraordinary and compelling reasons exist for compassionate release.  *See United States v. Haas*, Civ. No. 6:17-cr-00037-GFVT-HAI-1, 2020 WL 4593206 (E.D.Ky. Aug. 7, 2020)' *citing United States v. Zuckerman*, No. 16 CR 194 (AT), 2020 WL 1659880, at *3 (S.D.N.Y. Apr. 3, 2020); *Alam*, 960 F.3d at 834.

Indeed, in enacting the First Step Act, Congress sought to enhance the effectiveness of the BOP's compassionate release review scheme, not replace it. *See United States v. Smith*, No. 4:95-CR-00019-LPR-4, 2020 WL 2487277 (E.D.Ark. May 14, 2020); *United States v. Ng Lap Seng*, 459 F.Supp.3d 527, 536 (S.D.N.Y. Mar. 15, 2021)("If Congress desired to so fundamentally change the compassionate release process by circumventing the BOP's full administrative review, Congress could have used clearer language, as it did elsewhere in the First Step Act.").

Reading the "lapse of 30 days" language as a "futility" provision satisfies the apparent dual objectives of Congress to respect the BOP's process while ensuring expeditious and expanded access to the Courts for defendants.

In *Haas, supra,*, the district court explained that § 3582(c)(1)(A) requires the defendant to "fully exhaust all administrative rights" and where the BOP responds to the defendant's request within thirty days, the defendant is required to see the appeals process through and the "lapse of 30 days" provision has no bearing on the case. *Haas, supra.,* at *5. The court noted, however, that the Sixth Circuit has yet to specifically address whether a defendant must fully exhaust his appeals when he receives a response from the BOP within the thirty-day window. *Id.* Concluding that a reading of the "lapse of 30 days" language as a "futility" provision led to a logical result, the district court in *Haas* found that full exhaustion of the administrative process was required and held that Haas had failed to exhaust his administrative remedies.

This Court must address an additional wrinkle in Perkins' case – Perkins received a response which was late and arguably relieved him of any further action in the administrative realm, but Perkins did not seek relief in this court for five months thereafter. We are left in a quandary over whether, in this scenario, the "lapse of 30 days" provision excuses Perkins' failure to appeal the warden's denial of his request.

Under a "futility" theory, it would not seem to matter whether the denial was received by Perkins before or after the lapse of thirty days where he receives the response before he has filed for relief in federal court. Where he has been afforded an avenue for appeal, he is required to pursue it before seeking relief in federal court and the "lapse of 30 days" provision is inconsequential. Under a "passage of time" interpretation, however, the receipt of the tardy response would not compel Perkins to appeal, though the process is made available to him. The

6

Court finds this outcome to be inconsistent with Congressional intent, especially in this instance where time clearly was not of the essence for Perkins. Perkins did not file his motion for compassionate relief when thirty days had elapsed or any time even remotely close to that date. Perkins did nothing and received a response forty-five days from the receipt of his request, he chose not to appeal during the twenty-day window afforded him, and he filed the present motion for compassionate release five months later. We do not read the statute to render appeals optional, as such reading would render the exhaustion language superfluous. This Court would therefore follow the "futility" interpretation of the statutory 30-day language and find that Perkins failed to exhaust administrative remedies.

In any event, this is Perkins' second motion and this time he did attempt to exhaust. While we disagree with Perkins' rationale that he can claim to have fully exhausted because his response from the warden did not arrive in thirty days, there is apparently room for a difference of opinion on this point. In *United States v. Bolze*, No. 3:09-CR-093-TAV-CCS-1, 2020 WL 6151561 (E.D.Tenn. Oct. 20, 2020), the district court noted that "reasonable minds may disagree as to whether a motion automatically ripens after the passage of thirty (30) days from a defendant's request to the warden." *Id.* at *4. The court stated that "although the Sixth Circuit has yet to encounter the issue presented here, it implied it would read § 3582(c)(1)(A) to allow a defendant to file a motion after thirty (30) days had passed from the filing of a request with the warden, regardless of whether the warden had responded and regardless of the appeal status of a denial by the warden," *quoting Alam*, 960 F.3d at 834. Therefore, for purposes of this opinion, we will assume that Perkins satisfied the exhaustion requirement of the First Step Act and address the substance of his motion.

Perkins' motion for compassionate release will be denied for the following substantive reasons.

Under § 3582(c)(1)(A), a court may reduce a defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The court must also consider the "[sentencing] factors set forth in section 3553(a) to the extent they are applicable." § 3582(c)(1)(A).

Congress tasked the Sentencing Commission that, "in promulgating general policy statements regarding the sentencing modification provisions in section 3582(c)(1)(A) of Title 18, [it] shall describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 28 U.S.C. § 994(t). In the Commentary to U.S.S.G. § 1B1.3, the Commission described four circumstances which constitute extraordinary and compelling reasons for sentence reduction:

**(A) Medical Condition of the Defendant.--**

**(i)** The defendant is suffering from a terminal illness (i.e., a serious and advanced illness with an end of life trajectory). A specific prognosis of life expectancy (i.e., a probability of death within a specific time period) is not required. Examples include metastatic solid tumor cancer, amyotrophic lateral sclerosis (ALS), end-stage organ disease, and advanced dementia.

**(ii)** The defendant is--

**(I)** suffering from a serious physical or medical condition,

**(II)** suffering from a serious functional or cognitive impairment, or

**(III)** experiencing deteriorating physical or mental health because of the aging process, that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover.

**(B) Age of the Defendant.--**The defendant (i) is at least 65 years old; (ii) is experiencing a serious deterioration in physical or mental health because of the aging process; and (iii) has served at least 10 years or 75 percent of his or her term of imprisonment, whichever is less.

**(C) Family Circumstances.--**

**(i)** The death or incapacitation of the caregiver of the defendant's minor child or minor children.

**(ii)**     The incapacitation of the defendant's spouse or registered partner when the defendant would be the only available caregiver for the spouse or registered partner.

**(D) Other Reasons.--**As determined by the Director of the Bureau of Prisons, there exists in the defendant's case an extraordinary and compelling reason other than, or in combination with, the reasons described in subdivisions (A) through (C).

By its own terms, § 1B1.13 applies only "[u]pon motion of the Director of the Bureau of Prisons." This policy statement has not been updated to reflect that defendants may now move the court for compassionate release. The United States Court of Appeals for the Sixth Circuit recently found that "§ 1B1.13 is not an 'applicable policy statement' for *defendant-filed* motions for compassionate release," (*United States v. Tomes*, 990 F.3d 500 (6th Cir. 2021) *citing United States v. Elias*, 984 F.3d 516, 519 (6th Cir. 2021), and thus it does not constrain the court's analysis of what constitutes extraordinary and compelling reasons for release. *Id*. We may turn to U.S.S.G. § 1B1.13, however, for "helpful guidance" in ascertaining whether extraordinary and compelling reasons exist in a given case that may warrant a sentence reduction. We acknowledge while so doing, however, that this Court is free to define "extraordinary and compelling reasons" on our own initiative. *See Tomes*, 990 F.3d at 503; *Elias*, 984 F.3d at 519-520.

In his motion, Perkins, 42 years old, described a number of health challenges. He states that he fears that if he contracted the COVID-19 virus he would be "more vulnerable to not survive." (DN 76, p. 1). He alleges that "[t]he medical staff [at FMC Lexington] can not get my blood pressure under control," that he is "overweight and obesity is another medical issue that most

people that have contracted the virus and dies from it had an issue with obesity," and that he "ha[s] sleep apnea I have not been treated for this because of the lockdown in the prison due to the corona virus." (DN 76, pp. 1-2).  He alleges that "COVID-19 at Lexington FMC is out of control" and "is a hot spot for the virus." (DN 76, pp. 2-3). He states that "I'm sorry for my action's [sic] and my decisions and I'm just asking for a chance.  The virus is scary and I fear that I will catch it and not survive if I do because of the conditions in this prison."  (DN 76, p. 5). This was the sole ground for the assertion of "extraordinary and compelling" circumstances warranting relief.

We note first that Perkins is serving his sentence at a federal medical center, a facility well-equipped to handle common concerns such as elevated blood pressure, sleep apnea and weight issues.  Further, Perkins provided only limited medical records from four dates in March, April and May of 2020 to support his argument, put forth in December of 2020, of heightened risk of adverse outcome from COVID-19.  These medical records, limited and outdated as they are, evidence that his ongoing medical needs with respect to his blood pressure ("BP") are being addressed.  The records indicate that he received blood pressure checks on March 3 (BP recorded as 139/93) and April 16 (BP recorded as 142/94).  On May 15 there is a note to increase his dosage of HCTZ due to poorly controlled hypertension.  On May 19 his BP was recorded as 132/96.  Each time he was seen and his blood pressure recorded, the notes indicate that Perkins "[d]enies chest pain, SOA or dizziness."  There is nothing in the medical records indicating Perkins' purported diagnoses of sleep apnea or obesity, nor that he expressed any concerns about such conditions at these visits.

With respect to Perkins' concern that he faces the potential for infection with the COVID-19 virus in the facility, we note that as of this writing, the Bureau of Prisons website (https://www.bop.gov) reports no cases of COVID-19 either among the inmates or the staff. Further, 584 of 968 inmates, including Perkins himself, and 306 staff members have received the

COVID-19 vaccine at FMC Lexington.  Thus, Perkins has failed to articulate an extraordinary and compelling reason for compassionate release under 18 U.S.C. §3582(c)(1)(A)(i) as the prevalence of COVID-19 at FMC Lexington and risks associated with exposure to the virus is the sole basis for his motion.

Perkins does not contend, nor could he successfully, that his sentence should be reduced because he is in poor health.  The Sentencing Commission identified terminal illness, or a serious physical, medical, or mental condition that substantially diminishes the ability of the defendant to provide self-care while incarcerated, and which is terminal or an otherwise permanent condition as evidencing an "extraordinary and compelling" reason for a sentence reduction.   While not directly applicable to a defendant's request for compassionate release, the severity of the impairments noted by the Commission to meet the "extraordinary and compelling" threshold suggests that something more than manageable, garden-variety health conditions is required to clear this first hurdle. Perkins has not alleged he suffers from a condition or combination of conditions that leave him impaired.  Indeed, the only reason he claimed he should be considered for compassionate release is that his medical conditions would increase his potential for an adverse outcome should he contract COVID-19.

Additionally, even when a defendant is statutorily eligible for a sentence reduction based on extraordinary and compelling reasons, compassionate release is only appropriate after consideration of the factors set forth in 18 U.S.C. §3553(a) and where the defendant is not a danger to the safety of any other person or to the community, as provided in 18 U.S.C. § 4142(g).

The United States urges under §3553(a)(1), that the nature and circumstances of Perkins' crime weigh against release as he poses a very real danger if released from custody.  The Court agrees with the United States for a number of reasons.

First, Perkins is a repeat drug trafficking offender and was held responsible in this case for distributing over 50 grams of heroin and 391 grams of methamphetamine.  He also has a conviction for being a felon in possession of a firearm.  Thus, the nature and circumstances of the offense as well as these aspects of the defendant's  history and characteristics militate against a sentence reduction, as the danger posed to the community appears great.

Perkins states that this is the first time he has been incarcerated for more than thirty days and that he has "learned [his] lesson."  DN 76, p. 4.  He states that he (1) does not have any documented behavioral incidents while in prison, (2) he has completed multiple programs while incarcerated, (3) he has maintained a job as a barber while at FMC Lexington, a job he held prior to his conviction and imprisonment, (4) he plans to get into an "electrician's union apprenticeship program" after he is released from prison to develop another trade, and (5) he has a fiancé with whom he has a residence and will return there after his release.  DN 76, pp. 4-5.  Perkins has not supported any of these statements with documentation such as certificates of completion or records verifying his good conduct.  We note, however, that the United States has not mentioned or addressed any of the information related by Perkins, nor has it attempted to balance the sum total of information addressed to the  §3553 factors.  The only comment in the United States' brief concerning post-sentencing conduct is wholly conclusory: "Nor is there any reason to think Perkins has been rehabilitated during the time he's served this sentence."  DN 79, p. 8.  This is unhelpful.

This Court has repeatedly been advised by the United States Court of Appeals for the Sixth Circuit that post-sentence conduct is relevant to the Court's determination whether a reduction in sentence should be granted.  *United States v. Boulding*, 960 F.3d 774, 784 (6th Cir. 2020)(thorough renewed consideration of the § 3553(a) factors is required; court correctly included post-sentencing behavior as part of that inquiry); *United States v. Williams*, 972 F.3d 815 (6th Cir. 2020)(reversed and

remanded because the Court failed to mention the defendant's argument regarding his post-conviction conduct); *United States v. Jenkins*, No. 20-5512 (6th Cir. Feb. 4, 2021)(Remanded for failure of the district court to mention defendant's post-sentence conduct in its explanation of its decision).   While it remains wholly within the Court's discretion whether and to what extent to reduce a sentence, the Sixth Circuit requires district courts to give a "complete review" to a motion for sentence reduction under the First Step Act.

We will assume for the sake of this analysis that Perkins' contentions concerning his good conduct in prison, completion of various programs, and his employment as a barber at FMC Lexington can be verified.  We acknowledge such positive efforts and find it laudable that Perkins is motivated to improve himself and his circumstances when he is released.  We note, too, that good conduct is expected and rewarded in the prison system.  Perkins has only served approximately 17 months of a 57-month sentence – less than thirty percent of his sentence.

We will accept at face value Perkins' representation that this longer sentence of 57 months has gotten his attention and he has "learned [his] lesson."   In imposing sentence, the § 3553(a) sentencing factors were thoroughly and carefully considered, including, among other things, the serious nature of the offenses which involved large quantities of heroin and methamphetamine and the charges to which Perkins pleaded guilty.   This was not his first drug trafficking conviction and he also has a conviction for being a felon in possession of a firearm.  Considering the seriousness of the crimes and Perkins' history and characteristics, this Court found that a sentence of 57 months imprisonment was sufficient but not greater than necessary to promote respect for the law, to reflect the seriousness of the offense, to deter future criminal conduct, to protect the public, and to serve as just punishment for the offense.  The Court has revisited these factors and finds nothing to call into question the initial determination of the appropriate sentence. The Court finds at this juncture, with

the defendant having only served a fraction of the sentence, that a reduction in sentence would undermine the carefully-balanced sentencing factors which are served by the sentence imposed.  The defendant's good conduct in prison and wake-up call to redirect his attentions away from drugs and toward productive lawful occupations suggests the efficacy and appropriateness of the sentence. The Court finds no ground to justify any reduction in Perkins' sentence.

Motion having been made and for the reasons set forth herein and the court being otherwise sufficiently advised, **IT IS HEREBY ORDERED AND ADJUDGED** that the motion of the defendant, Adrian Perkins, for compassionate release (DN 76) is **DENIED.**

**IT IS SO ORDERED.**

May 13, 2021

Charles R. Simpson III, Senior Judge
United States District Court

cc:    Counsel of Record
       Adrian Perkins
       Reg. #19556-033
       Federal Medical Center Lexington
       P.O. Box 14500
       Lexington, KY 40512

14